# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| KIRK D. and ALFREDA T. SLAUGHTER, | ) | Case No. 09-13319 (BLS) |
| | ) | |
| Debtors. | ) | |

**DECLARATION OF CHARLES R. HENSON IN SUPPORT OF MOTION OF AMC FINANCIAL HOLDINGS, INC. FOR RELIEF FROM THE AUTOMATIC STAY**

I, Charles R. Henson, being over the age of eighteen and otherwise competent to testify, in support of the Motion of AMC Financial Holdings, Inc. for Relief from the Automatic Stay (the "Motion"), pursuant to 28 U.S.C. § 1746, hereby deposes and states as follows:

1. I am a Vice President of AMC Financial Holdings, Inc. ("AMC") and I am authorized to make this affidavit in support of the Motion, filed against the above-captioned debtors (the "Debtors") in this case.

2. I am a custodian of the business records of AMC.

3. Attached as Exhibit 1 is a true and correct copy of a 'Note' dated August 19, 1997, executed by the Debtors, as borrowers, and payable to the order of Atlas Capital Funding, Inc. ("Atlas"), as lender, in the principal amount of $42,265.00 (the "Note").

4. The Note was endorsed by Atlas to Cityscape Corp., and re-endorsed in blank by Cityscape Corp. AMC is presently the holder of the Note, and the original Note is in AMC's possession.

5. Pursuant to the Note, the Debtors are required to make monthly payments in the amount of $556.23.

6. Attached as Exhibit 2 is a true and correct copy of a mortgage executed by the Debtors' to secure the indebtedness and obligation evidenced by the Note with real property known as 657 Country Path Drive, New Castle, Delaware 19720 (the "Property").

7. Shortly after execution of the Note, Atlas assigned the Note and its accompanying security documents to Cityscape. Cityscape endorsed the Note in blank and AMC is the present holder of the Note.

8. I have reviewed the Motion and the facts alleged therein are true and correct to the best of my knowledge.

9. The Debtors are in default of their Note and Mortgage obligations to AMC.

10. The amounts owed by Debtors to AMC are as follows:

| | |
|---|---:|
| Unpaid Principal: | $41,063.73 |
| Pre-Petition Accrued Interest from July 26, 2000 through September 24, 2009: | $30,841.14 |
| Post-Petition Accrued Interest from September 25, 2009 through June 1, 2013: | $12,279.85 |
| Pre-Petition Late Charges from July, 2000 through September, 2009: | $2,288.31 |
| Post-Petition Late Charges from October, 2009 through June, 2013: | $807.84 |
| Attorneys' Fees Actually Incurred in Connection with Note: | $3,985.11 |
| Other Charges: Property Inspection | $50.00 |
| **Total:** | **$91,315.98** |

11. Interest continues to accrue from September 25, 2009, at the rate of $9.13 per day.

12. AMC estimates in good faith that the value of the Property as of the petition date is approximately the $230,750.00 scheduled by the Debtors.

13. As of the Petition Date, the Debtors' arrearage totaled $43,044.18.

14. AMC has not received any post-petition payments from the Debtors. The amount of post-petition arrearages due to AMC as of the date hereof, under and pursuant to the Note and secured by the lien of Mortgage, is $, $16,522.65 not counting post-petition late fees.

2

15. Attached hereto as Exhibit 3 is a current payoff statement for the Note.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 7, 2013.

*Charles R. Henson*
Charles R. Henson
Vice President of AMC and Cityscape

# Exhibit 1

## NOTE

AUGUST 19TH, 1997            WILMINGTON                  , Delaware
[Date]                        [City]                     [State]

657 COUNTRY PATH DRIVE, NEW CASTLE, DELAWARE  19720
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 42,265.00       (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is ATLAS CAPITAL FUNDING, INC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of  14.990   %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $  566.23.
I will make my payments on the  25TH  day of each month beginning on SEPTEMBER  25TH, 1997.
I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on  AUGUST  25TH,  2017       , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at 11785 BELTSVILLE DRIVE, #250, BELTSVILLE, MARYLAND
20705                                          or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of  FIFTEEN  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
     5.000    % of my overdue payment, but not less than U.S. $  27.81      and not more than
U.S. $  27.81  . I will pay this late charge only once on any late payment.

(B) Notice From Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated    AUGUST  19TH,
1997    , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

### 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

### 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

### 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

### 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)
KIRK SLAUGHTER                  Borrower

_____ (Seal)
ALFREDA SLAUGHTER               Borrower

_____ (Seal)
                                Borrower

PAY WITHOUT RECOURSE
TO THE ORDER OF: Cityscape Corp.

ATLAS CAPITAL FUNDING, INC.
BY: _____
CORPORATE OFFICER

_____ (Seal)
                                Borrower

_____ (Seal)
                                Borrower

_____ (Seal)
                                Borrower

PAY TO THE ORDER OF [Original Only]
-WITHOUT RECOURSE-
CITYSCAPE CORP.

BY _____
WENDY A. BERNARD, ASSISTANT SECRETARY

DE2N2G - 06261995                Page 2 of 2                Doc Prep Plus, Inc.

# Exhibit 2

094.71

BK 4768 PG 0059

97 AUG 27 A 11: 52.0

Parcel Number: 10-049.20 222

Prepared By: CHERIE SNIPE
PER TO Exhibit SGR
1415 RT. 70 EAST
Cherry Hill NJ 08034

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

THIS MORTGAGE is made this 19TH day of AUGUST, 1997, between the Mortgagor,
KIRK SLAUGHTER AND ALFREDA SLAUGHTER

(herein "Borrower"), and the Mortgagee,
ATLAS CAPITAL FUNDING, INC.
a corporation organized and existing under the laws of THE STATE OF MARYLAND
whose address is 11785 BELTSVILLE DRIVE, #250, BELTSVILLE, MARYLAND 20705

(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 42,265.00, which indebtedness is evidenced by Borrower's note dated AUGUST 19TH, 1997 and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on AUGUST 25TH, 2017;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the NEW CASTLE COUNTY State of Delaware:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of 657 COUNTRY PATH DRIVE, NEW CASTLE
[Street]   [City]
Delaware   19720   (herein "Property Address"):
[Zip Code]

DELAWARE- SECOND MORTGAGE - 1/80 FNMA/FHLMC UNIFORM INSTRUMENT   Form 3808
DE2M1G - 01131995   Page 1 of 5   Doc Prep Plus, Inc.

5/18/99

AUG-19-97 18:32 From:ATLAS  TAL FUNDING INC                                        T-692 P.12/51 Job-247

BK4768PG0060

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to

AUG-19-97  18:33  From:ATLAS     TAL FUNDING INC                                    T-692  P.13/51  Job-247

BK4768PG0061

Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by Federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees of FIVE                                                     percent ( 5.000 %) of the amount decreed for principal and interest, which fee shall be allowed and paid as part of the decree of judgment in such proceeding, and costs of abstracts, title reports and documentary evidence.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on

BK4768PG0063

receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation if any.

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, sealed and delivered in the Presence of:

_____ (signature) As to both

_____ *Kirk Slaughter* _____ (Seal)
KIRK SLAUGHTER                                          -Borrower

_____ *Alfreda Slaughter* ____ (Seal)
ALFREDA SLAUGHTER                                       -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

STATE OF DELAWARE         }
                          }ss:
COUNTY OF New Castle      }

BE IT REMEMBERED that on this 19TH day of AUGUST, 1997 personally came before me, KIRK SLAUGHTER AND ALFREDA SLAUGHTER

part Y (IES) to this Mortgage personally known to me to be such, and severally acknowledged this Mortgage to be THEIR act and deed.

Given under my Hand and Seal of Office, the day and year aforesaid.

_____ Notary Public

MICHAEL J. ISAACS
ATTORNEY AT LAW
Notary Public Pursuant to
29 Del. Code Sec. 4325 (a)(3)

DE2M5G - 01131995                   Page 5 of 5                          Doc Prep Plus, Inc.

# Exhibit 3

AMC FINANCIAL HOLDINGS INC
PO BOX 224667
DALLAS, TX 75222-4667
(800)523-2590

July 3, 2013

**Payoff Statement**

| | |
|---|---|
| Loan Number: | 11009193 |
| Investor: | 03  322  334 |

**Property Address**
657 COUNTRY PATH DR
NEW CASTLE DE 19720

**Borrower**
KIRK SLAUGHTER
657 COUNTRY PATH DR
NEW CASTLE DE 19720

KIRK SLAUGHTER
657 COUNTRY PATH DR
NEW CASTLE DE 19720

## Account Information

| | |
|---|---|
| Loan Type: | Conventional |
| Interest Calculation Method: | Conventional Loan - 360 |
| Estimated Payoff Date: | 06/01/13 |
| Due Date Next Payment: | 07/26/00 |
| Current Interest Rate: | 8.00000 |
| Daily Interest Rate: | .00022222 |
| Daily Interest Amount: | 9.13 |
| Number of Days Interest Due: | 4723 |

### Balances

| | |
|---|---|
| T&I Balance: | .00 |
| Delinquent Late Charges: | 268.71 |
| Returned Check Balance: | .00 |
| Miscellaneous Fee Balance: | .00 |
| Unapplied Balance: | .00 |
| Subsidy Balance: | .00 |
| Deferred Principal Balance: | .00 |
| Calc Late Charges (Due Date to Payoff Date) | 2,827.44 |

## Amounts for Payoff

| | |
|---|---|
| Principal Balance: | 41,063.73 |
| + Interest Due: | 43,120.99 |
| - Unapplied Balance: | .00 |
| - T&I Balance: | .00 |
| - Subsidy Balance: | .00 |
| + Delinquent Late Charges Due: | 268.71 |
| + Calculated Late Charges: | 2,827.44 |
| + Returned Check Charges Due: | .00 |
| + Total FCL/Bank Fees Due: | 4,035.11 |
| + MIP/PMI Payment Due: | .00 |
| + Miscellaneous Fees Due: | .00 |
| - Loss Draft Balance: | .00 |
| **Total Amount Due** | **91,315.98** |

### Important Information

WE RESERVE THE RIGHT TO ADJUST THESE FIGURES AND REFUSE ANY FUNDS THAT ARE NOT SUFFICIENT TO PAY OFF THE LOAN IN FULL. (THIS INCLUDES, BUT NOT LIMITED TO, DISHONORED PAYMENTS, DISBURSEMENTS OR ADJUSTMENTS MADE BETWEEN THE DATE OF THIS DEMAND / PAYOFF STATEMENT AND THE RECEIPT OF THE PAYOFF FUNDS). FIGURES ARE SUBJECT TO FINAL AUDIT. THE PAYOFF FIGURE IS VALID THROUGH THE ESTIMATED PAYOFF DATE SHOWN ABOVE. OUR EXPRESS MAIL ADDRESS IS 4547 LAKESHORE DRIVE, WACO, TX 76702.